1

UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

DEC 2 3 2019

David J. Bradley, Clerk of Court

UNITED STATES OF AMERICA

§
§
§

VS.

§

CRIMINAL NO. #19-CR-303

BERNARD ROBINSON

## MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED (Perhaps present this included in a sentencing memorandum)

NOW COMES, Defendant **(BERNARD HOPKINS)** Respectfully Moving Said Court in the Southern District of Texas with a MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED, Requesting that the Honorable Judge **(EWING WERLEIN JR.)** of Said Court grant a minimum Two days and maximum Three Days Credit for one day Served.

## INTRODUCTION

The Defendant being incarcerated an estimated ( 150 ) days at the Joe Corley Detention Facility which is a contract agency operated by GEO Correctional and Detentions, located at 500 Hilbig Road Conroe, Texas 77301 Is Considered under the Constitutional rights for Prisoners a HARDTIME detention facility, invoking several protections under the 8th Amendment of the United States Constitution.

## SUPPORTING ARGUMENT

There are several factors to consider for this motion that are present at the Joe Corley Detention Facility that can further trigger protections under the 8th Amendment and warrant the two to three days credit for one day served by a U.S Marshal Detainees at such a Facility. All information is foundational within the walls of this facility and sited information from the "Rights of Prisoners", Third Edition Pages 85-120.

The Role of the Courts regarding United States citizens sentenced to confinement as punishment for criminal activity do not lose the protections afforded them by the United States Constitution. The eighth amendment to the Constitution prohibits the infliction of "cruel and unusual" punishments upon citizens.  2 This prohibition applies not only to the federal government but also to the states in their operation of state penitentiaries. (Whitley v. Albers, 475 U.S. 312, 318-

19, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986).  Certainly, states are not obliged to house their prisoners in a country club-like environment with all of the luxuries of twentieth century life; incarceration necessarily entails the withdrawal or limitation of rights and privileges. Hudson v. Palmer, 468 U.S. 517, 524, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). "To the extent that [prison] conditions are restrictive and even harsh they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981). Thus, sentenced inmates may be required to live under punitive conditions so long as those conditions are not cruel and unusual. Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979).  Again this statement is in regards to sentenced inmates.  I am sitting as a presentenced detainee in a punitive-communal segregation environment.

{719 F. Supp. 1261} But the eighth amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and <u>wanton</u> infliction of pain (psychological or physical), are grossly disproportionate to the severity of the crime, or are "totally without penological justification.

A court faced with the responsibility of drawing the line between constitutional and unconstitutional conditions undertakes a delicate task. No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346. This analysis *should not be subjective.* Rather, the court's judgment must be "informed by objective factors to the maximum possible extent." Id.

The role of the courts, then, is to enforce constitutional standards and to protect the constitutional rights of prisoners. Ruiz v. Estelle, 679 F.2d 1115, 1126 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 75 L. Ed. 2d 795, 103 S. Ct. 1438 (1983).  This somewhat convoluted legal process really means that once a plaintiff shows that a state official's actions have violated the Constitution, the court can indirectly reach the state -- "the scope of the district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971). Thus, the {719 F. Supp. 1262} Court can reach the Commonwealth through the named defendants in this case.

1.      The Joe Corley Detention facility operates a communal segregation Jail with limited liberty interest afforded to the inmates in general population. Punitive segregation has a long pedigree in this country.  Historically, ever since prisons were established in the early nineteenth century for various reasons, including using it as a sanction for the serious violations of institutional rules.  In more recent time, the units have continued to be used as punishment for rules infractions or unduly or disruptive inmates.  At Joe Corley, this in the General Population.  Typically an inmate in this status is locked up in his cell or dorm for 23 or more hours per day with limited opportunities for exercise or programming.  As a result the conditions impose at least partial social isolation and partial reduction of certain form of stimulation as compared to "normal General populations within the federal system.  According to some estimates as many as 7 to 10% of all inmates are currently confined in some form of punitive segregation.  Again the Joe Corley jail

operated this type of system that has become a norm within the development of "Supermax" prisons designed to house inmates who are considered the most incorrigible or difficult.  I am a (19) year old family fighting a case...within no violent background subjected to these conditions.

1.a.     The access to recreational services are limited to only several hours per week and at times less than an 1 hour per day, at times several days can go by without any recreational time at all making the detention intolerable.  Recreation is often overcrowded at best with all detainees from a particular hall in one open roofed room with no boundaries for activities.   Often no cold water or cups are provided.  Recreation can often become just as stressful as being in the small dorm units with no window access.   In these "SuperMax" units' inmates are held under conditions similar to punitive segregation.  Prisoners are locked in their cells for virtually the entire day and night with very limited opportunities for programs or recreation and with minimal visiting and other activities.  These units are built and used for inmates with disciplinary problems such as gang activity.  The facility also has no classification which combines all types of disruptive personalities in one confined space for 23-24 hours a day with no window to the outside sun or night light.  Thus, in litigation about conditions in these units both the objective and the subjective branches of the Eighth Amendment test must be considered.   I am requesting the court view my stay at Joe Corley as a stay of punitive/communal segregation and that I am being punished harshly prior to my sentencing date.  For pretrial detainees, challenging restrictive housing practices in a jail setting is governed by the Fourteenth Amendment; however the standard to e applied is the Eighth Amendment test. See, e.g., *Landfair v. Shehan*, 878 F. Supp 1106 (N.D. Ill.1995)The issue in this case like most cases is whether he conditions in the punitive segregation unit, or in the way which a particular punitive segregation unit operates, falls below "contemporary standards of decency" through "the unnecessary and wanton infliction of psychological pain.  There is a strong case to make for the proportion that this kind of restrictive confinement, with the severe sensory deprivation that it entails, at least when used for extended periods of time, violates the Eight Amendment.  I am concerned with, like most detainees studied, after a confinement in this type of isolation we are subjected to a semi-fatuous condition, from which it was next to impossible to arouse form or rehabilitate to his prior state.  Research validates these observations.  Studies confirm that "serious emotional consequences" result when isolation is utilized as a form of imprisonment. (US v Moreland, 258 US 433, 449, S. Ct. 368, 66 L. Ed. 700, 24 A.L.R. 992 (1992).

The United States Supreme Court set an example when, over a two decades ago in *Hutto v. Finney*, the Court upheld a lower court's order limiting the length of stay in the punitive segregation unit of the Arkansas prison system to 30 days. The *Hutto* Court that several factors, the prohibition against cruel and unusual punishment had been violated by stays in the prison solitary confinement unit that exceeded that length of time.  While the terms punitive segregation and solitary confinement used in this section imply that prisoners are separated from all other inmates, often in punitive segregation units several convicts are confined in relatively small isolations cells designed for fewer persons than are held in them, thereby creating a serious overcrowding problem.   Not to mention the negative psychological implications that arises.  This was certainly the case in *Hutto*.  (Hutto v. Finney, 437 US 678, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)

4

2.      Dietary needs of inmates in general population is below federal prison standards and "Meals" can be considered "Cruel" which is tolerable for 1 to 2 days but cruel and unusual under the 8th Amendment beyond that.   As the Court put it in the Hutto case, confinement in a filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerable after weeks and months.  Following the example of Hutto, "courts have drawn limits as to the kinds of physical conditions and treatment may be tolerated" in punitive segregation units.

3.      The lack of Movement , where an inmate who is not in Protective segregation, isolated segregation, administrative segregation or otherwise disciplinary segregation is subjected to the aforementioned treatment creating a condition of disproportionate punishment to an offense.

4.      The time an inmate in general population spends in his or her cell can at times be in excess of 22 hours in a single day period which can amount to solitary confinement and a serious and significant deprivation of liberty.  Our general population is a 16 ft by 20 ft. dorm of which we spend 23-24 hours a day.

5.      Personal Hygiene is significantly degraded at the facility which depends on the inmate population which is transient in nature to maintain the cleanliness of the facility, and common illnesses, which are easily avoidable, can become a problem  that the limited medical staff is unable to suppress before the entirety of the inmates in general population is affected.

6.      The fact that we have to drink water, washes our hands, and cleans our eating utensils out of the same sink that is provided for us, it's also the same instrument that we have to use to relieve ourselves of our bodily waste. Being that we also urinate and defecate out of this instrument I truly believe that is totally unsanitary and asinine to our rights.

7.      Poor medical attention that deprives detainees with lack of "personal severe chronic illness" and lack of "quick responsive detailed services". While being incarcerated at the "Joe Corley Det. Center" is most assured to be classified as in institution that should qualify to extend "HARDSHIP TIME CREDIT" because of these certain partially violated rights.

8.      EXHIBIT  PAGE # 6


## CONCLUSION

Federal courts will provide relief for deprivation of a prisoner's constitutional right to be free of Cruel and unusual punishment during his or her stay of confinement, when the conditions such as the ones at the Joe Corley Detention Facility become such that a prisoner is deprived of personal hygiene or his or her diet is inadequate, the 8th Amendment is violated. In addition punishment that is imposed for an improper purpose or is disproportionate to the offense can violate a prisoner's 8th Amendment.

## PRAYER

Wherefore Premise considered, the Defendant  (BERNARD ROBINSON). Prays the
Honorable Judge   (EWING WERLEIN JR.), of said Court in the Southern district of Texas
Grant  the MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED, and grant
Defendant two to three days credit for one day served for the time jailed at the Joe Corley
Detention Facility.  Mr. (BERNARD ROBINSON) has been in daily prayer since his initial
arrest until this day for a renewed heart, for grace under God and under the hand of the
court.  Mr. (BERNARD ROBINSON) also prays for the court and his family.

Respectfully Submitted,

-----------------------------------------------------------

BERNARD ROBINSON

DEFENDANT

Bernard Robinson # 9652479
Joe Corley Detention Facility
500 hilbig Rd
Conroe Tx 77301

THIS LEGAL MAIL HAS
NOT BEEN INSPECTED

NORTH HOUSTON TX 773

19 DEC 2019   PM 5 L

FOREVER
USA

Barn Swallow

Honorable Judge
Ewing werlein JR
US courthouse Room #11D
515 Rusk st
Houston Tx 77002

David J. Bradley, Clerk of Court

DEC 23 2019
FILED
United States Courts
Southern District of Texas